# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| _____ | ) |
| In re: Arby's Restaurant Group, Inc., | ) Case No. 1:17-cv-514-WMR |
| Data Breach Litigation | ) Case No. 1:17-mi-55555- WMR |
|  | ) |
| CONSOLIDATED FINANCIAL | ) |
| INSTITUTION CASES | ) |
| _____ | ) |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS, AND MEMORANDUM OF LAW

On March 5, 2020, the Court preliminarily approved a settlement agreement (the "Settlement Agreement") between the Financial Institution Plaintiffs ("Plaintiffs") and Defendant Arby's Restaurant Group, Inc. ("Arby's") and a proposed notice plan. Notice having since been disseminated, Plaintiffs now move for final approval of the settlement and related relief. The Settlement Agreement, which resulted after months of arm's-length negotiations between experienced lawyers and supervised by a well-respected mediator, is fair, reasonable, and adequate and has been embraced by the class – notably, ***none*** of the roughly 4,400 Class Members have objected to the Settlement Agreement and only ***two*** have opted out. Moreover, the Settlement Class satisfies the requirements for certification and the notice program, as implemented, satisfies due process and Rule 23. This motion should be granted and the Settlement Agreement finally approved.

In support of this motion, Plaintiffs submit the Settlement Agreement and attachments (Exhibit B, the "SA"), including the Distribution Plan (Exhibit B-1), Proposed Order for Final Judgment (Ex. B-2), Notice (Exhibit B-3), Legal Notice (Exhibit B-4), and Declaration of Settlement Administrator and attachments ("Meredith Declaration," Exhibit C). Plaintiffs also cite – and for ease of reference attach as exhibits to this brief – the Declarations of Karen Hanson Riebel filed in support of Plaintiffs' preliminary approval motion ("Riebel Declaration," Exhibit D) and Plaintiffs' fee application ("Riebel Fee Declaration," Exhibit E).

2

## BACKGROUND AND SETTLEMENT TERMS

### I.     The Data Breach.

From August 12, 2016 to January 13, 2017, Arby's suffered a massive data breach ("the Data Breach"), the scale of which was not made public until February 2017. During the Data Breach, computer hackers gained access to Arby's corporate networks and identified weaknesses in the segmentation protocols dividing the corporate network from the cardholder data environment (the environment that processes payment card transactions). Exploiting these weaknesses, hackers could access Arby's point-of-sale ("POS") systems, install malicious software stealing debit and credit card data from the magnetic stripes on the payment cards swiped by customers on Arby's POS devices, and transfer that data to an external source to be retrieved without detection. This data was bundled and sold on the dark web, resulting in a significant number of fraudulent charges.

On February 9, 2017, Brian Krebs, a data security investigator, first reported on his blog that Arby's had suffered a data breach through malware placed on Arby's restaurants' POS systems. Financial institutions, including Plaintiffs, later learned the data on their payment cards was exposed during the Data Breach through alerts by the payment card industry, including the Compromised Account Management System ("CAMS") alerts from Visa, Inc. ("Visa") and Account Data Compromise Alerts ("ADC") from MasterCard. The CAMS and ADC alerts listed the specific

payment card accounts identified as compromised in the Data Breach. Arby's then publicly announced the Data Breach, disclosing in April 2017 that over 950 of its restaurants had been infected with malware for an average of 73 days. The Data Breach caused financial institutions, including Plaintiffs, to incur considerable costs replacing and re-issuing cards and covering fraudulent charges.

## II.    **Procedural History.**

In February and March of 2017, consumer and financial institution plaintiffs filed putative class actions against Arby's in the Northern District of Georgia.[1] On May 19, 2017, Plaintiffs filed a consolidated class action complaint. *In re: Arby's Restaurant Group, Inc. Data Security Litigation Consolidated Financial Institution Case*, Case No. 17-mi-55555 (N.D. Ga.), ECF No. 165,[2] on behalf of themselves and a national class of financial institutions that had issued debit or credit cards used at Arby's restaurants during the time period affected by the Data Breach. Plaintiffs asserted claims for negligence, negligence per se, and a claim for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* that Arby's failure to implement and maintain adequate security measures resulted in the Data Breach causing them losses. On June 19, 2017, Arby's filed a motion to dismiss

---

[1] This motion only involves the financial institution plaintiffs.

[2] All ECF numbers cited herein refer to *In re: Arby's Restaurant Group, Inc. Data Security Litigation Consolidated Financial Institution Case*, Case No. 17-mi-55555 (N.D. Ga.).

the consolidated class action complaint, ECF No. 178, which the Court denied on March 5, 2018. ECF No. 287. Plaintiffs then filed their First Amended Consolidated Complaint (the "Complaint") on August 3, 2018. ECF No. 363.

For ten months, the parties engaged in extensive discovery and motion practice. On June 10, 2019, the parties agreed to pursue mediation and explore settlement and filed a joint motion seeking a ninety day stay. ECF No. 476. On June 11, 2019, the Court granted the motion to stay. ECF No. 479.

On September 5, 2019, the parties attended a mediation with Hunter R. Hughes, III, an experienced mediator who has mediated numerous class actions, including those involving Home Depot, Publix, and the Coca-Cola Company. The parties made significant progress at this first mediation but were unable to reach a settlement. On September 13, 2019, the parties filed a joint motion to extend the stay for forty-five days to continue settlement discussions, ECF No. 482, which the court granted on September 16, 2019. ECF No. 483.

During this time, the parties held extensive arm's-length negotiations and reached a tentative settlement in November 2019. The Court extended class certification briefing on November 19, 2019 and on January 7, 2020 to allow the parties to finalize the Settlement Agreement and prepare their motion for preliminary approval. ECF Nos. 485, 487.

On February 10, 2020, Plaintiffs filed their Unopposed Motion for

Preliminary Approval of Class Action Settlement, Certification of Settlement Class, Approval of Notice Program and Scheduling of Final Approval Hearing, ECF No. 490 (the "Preliminary Approval Motion"). On March 5, 2020, the Court granted the Preliminary Approval Motion, entering an Order Preliminarily Approving Class Action Settlement and Directing Notice to Settlement Class. ECF No. 492 (the "Preliminary Approval Order"). The Preliminary Approval Order found the proposed settlement to be fair, reasonable, and adequate to warrant providing notice of the Settlement to Class Members and set a Final Approval Hearing for July 30, 2020. The Court appointed KCC Class Action Services LLC as Settlement Administrator. KCC was responsible for class notice and claims administration. On April 2, 2020, the Settlement Administrator mailed Notice Packets to Class Members and the Settlement Website went live, initiating the claims process.

On May 18, 2020, Visa filed a Motion for Leave to Submit Amicus Brief from Non-Party Visa Inc. Regarding Consideration of Final Approval of Proposed Class Settlement. ECF No. 494 ("Visa's Motion" and the "Amicus Brief," respectively). Visa challenged the accuracy of the parties' description of the benefit of the Settlement Agreement and sought leave to file the Amicus Brief to "provide important context and clarity regarding the settlement" and "ensure neither this Court nor . . . class members are misled," yet sought no particular relief. Visa's Mot. at 1; Amicus Br. at 18. On May 19, 2020, the Court ordered the parties to respond

to Visa's Motion within seven days. ECF No. 497. On May 26, 2020, Plaintiffs and Arby's filed responses. ECF Nos. 500 ("Plaintiffs' Response to Visa") and 501 ("Arby's Response to Visa"). Neither Plaintiffs nor Arby's opposed Visa's Motion, but Plaintiffs confirmed to the Court that all of the terms of the proposed Settlement Agreement had been accurately disclosed to the Court and the Settlement Class, ECF No. 500 at 1. Arby's Response also disputed Visa's characterization of the Settlement Agreement. ECF No. 501 at 1-2.

## III.  **Terms of the Proposed Settlement Agreement.**

The terms of the proposed Settlement Agreement are summarized below. The full terms are set forth in the Settlement Agreement, attached as Exhibit B.

### A. The Settlement Class.

The proposed Settlement Class is defined as:

> All United States-based issuers of Visa and MasterCard payment cards that issued at least one Alerted-On Payment Card and do not validly request exclusion from the Settlement Class.

SA ¶ 3.1.[3]

### B. Monetary Compensation for Class Members.

Each Settlement Class Member was eligible to submit a claim for monetary

---

[3] An "Alerted-On Payment Card" is a payment card for which Visa or MasterCard issued an alert to the issuer that the card was affected by the Data Breach (the US-2017-0057 alert series in the case of Visa or the ADC002618 alert series in the case of MasterCard). *Id.* at ¶ 1.5; Ex. C, Riebel Decl. ¶ 5-7.

compensation by submitting a signed Claim Form indicating the total number of card accounts they issued that were affected by the Data Breach. These accounts fall into one of two categories: Assessed Card Accounts and Non-Assessed Card Accounts. Distribution Plan ¶ 2. An Assessed Card Account is an Alerted-On Payment Card for which Visa or MasterCard would have issued an Assessment, unless Visa or MasterCard determined the Card was not at risk as a result of the Data Breach.[4] SA at ¶ 1.34; Riebel Decl. at ¶ 6. A Non-Assessed Card Account is an Alerted-On Payment Card that would not have been included in an Assessment, even if Visa or MasterCard determined that the Card was at risk as a result of the Data Breach. SA at ¶ 1.33; Riebel Decl. at ¶ 7.[5] Each Settlement Class Member that submitted a valid Claim Form is entitled to $2.00 times 78% of its Non-Assessed Card Accounts and $.32 times 78% of its Assessed Card Accounts.[6] The maximum dollar amount

---

[4] An Assessment is compensation allowing Class Members to recover a portion of their damages resulting from the Data Breach, which Visa or MasterCard has already required Arby's acquiring bank, Bank of America Merchant Services ("BAMS") to pay to Visa and MasterCard. Riebel Dec. at ¶ 6.

[5] For issuers of Visa-branded accounts, a Non-Assessed Payment Card Account is an account that received a CAMS alert from Visa between August 11, 2016, and February 7, 2017. For issuers of MasterCard-branded accounts, a Non-Assessed Payment Card Account is an account that received an ADC alert from MasterCard between August 12, 2016, and February 8, 2017, associated with a payment card that was not EMV-enabled when it was used in the transaction at Arby's that resulted in the account's inclusion in an alert in the ADC002618 series, or was issued by a Settlement Class Member that failed to enroll in the MasterCard ADC program for the calendar year 2017. SA at ¶¶ 1.36, 1.19. An Assessed Payment Card Account is an Alerted-On Payment Card Account that is not a Non-Assessed Payment Card Account. SA at ¶ 1.48.

[6] The 78% figure is used in these calculations to reflect the fact that Visa and MasterCard ultimately determined that only approximately 78% of the Alerted-On

8

allocated to Non-Assessed Payment Card Accounts is $1,439,888 and the maximum dollar amount allocated to Assessed Payment Card Accounts is $1,547,248, for a total maximum settlement cash value of $2,987,136. SA at ¶¶ 1.34, 1.35.

The monetary compensation in this Settlement was enhanced by Arby's agreement "not to take action against Visa seeking to prevent Visa from distributing" the Visa assessment to Class Members. SA at ¶ 5.5.[7] While Visa and MasterCard maintained their assessments are appropriate, Visa's has yet to be distributed and is the subject of legal challenges. Notice at ¶ 8; Pls.' Resp. to Visa at 3, 9. Arby's contests the amount of Visa's assessment and is in litigation with BAMS over the assessment (having impleaded Visa). Arby's has not (and will not) seek an injunction preventing the assessment from being distributed, however. Pls.' Resp. to Visa at 5, 7. Visa's concerns with this provision are discussed below. *See infra* § IV.

### C. Additional Security Measures.

In addition to the Settlement Consideration described above, Arby's agreed that for three years following the execution of this Settlement Agreement, it would establish, implement, and maintain a Comprehensive Information Security Program that is reasonably designed to protect the security, confidentiality, and integrity of payment card data that Arby's collects or receives at its POS systems in the United

---

Payment Card Accounts were at risk of misuse as a result of the Data Breach. Riebel Decl. at ¶ 8.

[7] Visa's Motion challenges this provision. See *infra* § IV.

States. SA at ¶ 5.6.1. This enhanced security program is a significant, non-monetary

benefit to Class Members.

### D. Costs of Notice and Administration.

Arby's agreed to exclusively fund all costs associated with the settlement

administration and the notice program. SA at ¶¶ 1.17, 5.3.2.

### E. Notice and Claims Program.

The Notice and Claims Program, *see* SA at ¶ 4  consisted of: (1) mailing the

Notice and Claim Form (collectively, the "Notice Packet") to members of the Class;

(2) publishing notice in the *ABA Banking Journal*; and (3) the creation and

maintenance of a website by the Settlement Administrator.

Consistent with this Court's Preliminary Approval Order and the terms of the

Settlement Agreement, on or about April 2, 2020, the Settlement Administrator

initiated the Notice and Claims Program, causing the Notice Packet to be printed and

mailed to 4,377 out of 4,379 entities identified as potential Class Members on the

Class List,[8] and established a website at www.arbyssettlement.com to provide

information to Class Members. Meredith Decl. at ¶¶ 5-6, 9. The website URL was

provided in the Notice Packet and visitors to the website could download copies of

---

[8] The Settlement Administrator could not find addresses for two potential class members and has received 260 Notice Packets returned by USPS with undeliverable addresses. Of those 260 returned Notice Packets, the Settlement Administrator identified updated addresses for 16 of those Class Members, to whom the Settlement Administrator promptly re-mailed Notice Packets. Meredith Decl. at ¶ 7.

the Notice, Claim Form, and other case-related documents. *Id.* at ¶ 9. The Settlement

Administrator also caused Summary Notice to be published in the *ABA Banking*

*Journal-Digital Edition* on April 29, 2020. *Id.* at ¶ 8. Finally, the Settlement

Administrator established and maintains a toll-free telephone number for potential

Class Members to call and obtain information about the Settlement, request a Notice

Packet, or receive assistance. *Id.* at ¶ 10. As of June 30, 2020, 21 potential Class

Members have called the telephone hotline. *Id.*

To date, the Settlement Administrator has received 298 timely-filed claim

forms and expects additional claim forms until the July 3, 2020 deadline. *Id.* at ¶ 11.

As of the June 3, 2020 deadline to request exclusion from the class and the June 18,

2020 deadline to object, the Settlement administrator received only two (2) requests

for exclusion,[9] and received zero (0) objections. *Id.* at ¶¶ 12, 13.

## F. Attorneys' Fees, Costs, Expenses, and Service Awards.

In addition to the Settlement Amount and Costs of Notice and Administration,

Arby's agreed to pay Attorneys' fees, costs, and expenses in an amount not to exceed

$2,300,000.00. Arby's also agreed to pay a Service Award not to exceed $10,000

per Settlement Class Representatives (the total of all of which were not to exceed

$2,312,864.00). SA at ¶ 7.1.

---

[9] Bank of America, N.A. and First Internet Bank of Indiana are the only two Class
Members to request exclusion.

**G. Releases**

If the Settlement is finally approved, the Class Plaintiffs will release Arby's from any claims relating to issues in this case. In turn, Arby's will release the Class Plaintiffs from any claims relating to the initiation, prosecution, or settlement of this matter. SA at ¶¶ 6.1, 6.2.

## ARGUMENT

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). A court's analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). As a prerequisite to directing notice of the proposed Settlement, the Court determined that it would likely be able to approve the Settlement and certify a settlement class. Prelim. Approval Order at 3. Now that the Court has invited and received the reaction of Plaintiffs and the Class, the Court must assess the settlement's strengths and weaknesses. 4 *Newberg on Class Actions* § 13:10 (5th ed. 2020). The Court should readily conclude the Settlement Agreement is fair, reasonable, and adequate.

**I.    Final Approval is Appropriate under Rule 23(e)(2).**

Civil Procedure Rule 23 ensures that courts focus on "the primary procedural considerations and substantive qualities that should always matter to the decision

whether to approve the proposal." Fed. R. Civ. P. 23(e)(3), 2018 Advisory Comm. Notes. These specific considerations are whether (1) the class was adequately represented; (2) the settlement was negotiated at arm's length; (3) the relief is adequate, taking into account the costs, risks, and delay of trial and appeal, how the relief will be distributed, the terms governing attorneys' fees; and (4) whether the Class Members are treated equitably relative to each other. Fed. R. Civ. P. 23(e). All of these considerations favor finally approving the settlement.

### A. The Class Was Adequately Represented.

Adequacy of representation is traditionally considered in connection with class certification and involves two questions: "(1) whether the class representatives have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *9-10 (N.D. Ga. Mar. 17, 2020) (citation omitted) ("*Equifax*").

Here, both the Class Representative Plaintiffs and Co-Lead Counsel have adequately represented the Class. The Class Representative Plaintiffs and absent Class Members share a common interest, assert the same claims stemming from the same event, and share the same injuries. During this litigation, Plaintiffs served twenty-two subpoenas and notices of depositions and deposed eleven individuals

including Arby's employees, former employees, and third parties. Co-Lead Counsel defended depositions of each named Plaintiff, fully briefed a motion to dismiss and substantially briefed class certification, in addition to several discovery-related motions. Co-Lead Counsel also attended numerous status conferences with the Court and retained experts who prepared draft reports. Plaintiffs' interests align with each other and the other Class Members, and Plaintiffs have retained attorneys with the requisite experience and qualifications to lead this litigation. *See, e.g.*, Prelim. Approval Order at 4-5.

**B. The Proposed Settlement Was Negotiated at Arm's Length.**

This Settlement was negotiated at arm's length without collusion, a fact supported by the terms of the Settlement, the length and difficulty of the negotiations, and Mr. Hughes' oversight as mediator. *See generally Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (the presence of "a highly experienced mediator, lends further support to the absence of collusion").

**C. The Relief is Fair, Reasonable, and Adequate.**

The relief for the Class is fair, reasonable, and adequate, taking into consideration the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the Class, and the terms of the proposed

award of attorneys' fees.[10]

### 1. The Risks, Costs, and Delay of Continued Litigation Weigh In Favor of Settling.

When the Settlement Agreement was executed, Plaintiffs had conducted thorough factual and legal investigations, defeated a motion to dismiss, and substantially briefed class certification. While Plaintiffs have confidence in their case, they recognize the immediate costs and risks of proceeding through class certification, summary judgment, trial, and appeal, which would cause substantial cost and further delay. In light of those risks, the Settlement Agreement provides adequate compensation to the Settlement Class including direct compensation, enhanced security measures, and Arby's promise not to prevent distribution of the Visa assessment.

### 2. The Method of Distributing Relief is Effective.

The distribution process is effective. The Settlement Agreement provides that Arby's will pay a Settlement Administrator, who will distribute payment to Settlement Class Members who submitted valid claims. SA at ¶ 5.3.1. Further, the Settlement Administrator in this case is highly regarded and experienced in handling large class actions claims.

### 3. The Terms Relating to Attorneys' Fees are Reasonable.

---

[10] Rule 23(e)(2)(C)(iv) also requires a court to consider whether there is "any agreement required to be identified under Rule 23(e)(3)." No such agreement exists in this case.

As described in their unopposed fee application, Plaintiffs request a fee award of $1,872,934.44, which was agreed to by the parties in arm's length negotiations *after* reaching agreement on the substantive relief for the Class. Pls.' Unopposed Mot. for an Award of Reasonable Attorneys' Fees and Expenses and Class Rep. Service Payments at 6, ECF No. 502-1 ("Plaintiffs' Fee Br."); Riebel Fee Decl. at ¶¶ 10-11. This request is in accordance with Eleventh Circuit precedent, represents only approximately 27.57% of Plaintiffs' Counsel's total Lodestar (not including additional lodestar incurred since the filing of that Motion), is well-justified under the facts and law, and is less than awards in similar cases. Pls.' Fee Br. at 14; Riebel Fee Decl. at ¶¶ 13-15.

### D. Class Members are Treated Equitably Relative to One Another.

The proposal treats Class Members equitably relative to each other. Each Class Member receives compensation based on the same formula that applies to all Class Members with one level of compensation for all Assessed Payment Card Accounts and another for Non-Assessed Payment Card Accounts. Therefore, each Class Member receives compensation in proportion to its alerted-on accounts attributable to the Data Breach and reflecting the relative damage done to each Class Member.

## II.    The *Bennett* Factors Also Support Final Approval.

In addition to the Rule 23(e)(2) factors, courts in the Eleventh Circuit apply the *Bennett* factors in evaluating final approval. *Equifax*, 2020 WL 256132, at *9-10 ("In addition to the rule-based factors set forth in Rule 23, in considering whether to approve the settlement the Court is further guided by the factors set forth in *Bennett*."); *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012) (courts must make findings that a settlement "is not the product of collusion" and is "fair, reasonable, and adequate"). The *Bennett* factors include:

> (1) the likelihood of success at trial; (2) the range of possible recover[ies]; (3) the point on or below the range of possible recover[ies] at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. The *Bennett* factors also support final approval.

## A. The Benefits of Settling Outweigh the Risks at Trial.

The first *Bennett* factor requires courts to weigh Plaintiffs' likelihood of success at trial "against the amount and form of relief contained in the settlement." *Family Med. Pharm., LLC v. Trxade Grp., Inc.*, No. 15-0590-KD-B, 2017 WL 1042079, at *6 (S.D. Ala. Mar. 17, 2017) (quoting *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014)). When Plaintiffs are not certain to succeed at trial, this factor weighs in favor of settlement. *See, e.g.*, *Equifax*, 2020 WL 256132, at *7. Although Plaintiffs here are confident in their case, they face

significant hurdles, including contested class certification and summary judgment motions from Arby's.[11] Even if Plaintiffs clear these hurdles, they must also win at trial and, likely, on appeal. *Id.* ("[T]he Court finds the cost and delay of continued litigation would have been substantial."); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) ("proceeding to trial comes with inherent risk") ("*Home Depot*"). The proposed Settlement eliminates these uncertainties and ensures Class Members will receive meaningful, certain, and prompt relief.

### B. The Settlement is Within the Range of Possible Recoveries and is Fair, Adequate, and Reasonable.

Courts analyze the second and third Bennett factors—whether the settlement is within the range of possible recoveries and whether it is fair, adequate, and reasonable—together. *See, e.g., Equifax*, 2020 WL 256132, at *10. The range of possible recoveries spans from non-liability to a varying range of monetary and injunctive relief. Thus, courts should not evaluate a settlement on a dollar-for-dollar or claim-by-claim basis but should assess the proposed settlement in its totality. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005). Even a

---

[11] While the Court must still approve class certification as part of the settlement process, one of the significant hurdles to a disputed class certification motion for trial is manageability, an issue that the Court does not have to address as part of settlement class certification. *Amchem Prod. Inc. v. Winsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

minimal settlement can be approved. *See, e.g.*, *Bennett*, 737 F.2d at 986; *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."). And where, as here, experienced Class Counsel strongly believe the relief is fair, reasonable, and adequate, the Court may rely on such experienced counsel's judgment. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'").

The proposed Settlement described in detail above is within the range of possible recoveries and is fair, adequate, and reasonable. These benefits, which include a claims-made settlement with injunctive relief, are similar to provisions of other settlements that have been approved, including those in data breach cases. *See, e.g.*, Order Granting Final Approval, *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-00356-JLR (W.D. Wash. Oct. 25, 2019) (granting final approval of financial institution claims-made settlement where defendant paid administration costs); Order Granting Final Approval, *In re Arby's Restaurant Group, Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR (N.D. Ga. June 6, 2019) (finally approving consumer claims-made settlement with identify theft protection services). Similarly, this Settlement Agreement is within the range of possible recoveries, is fair,

adequate, and reasonable, and should be finally approved.

### C. Continued Litigation Would be Expensive and Lengthy.

Class action cases can occupy a docket for many years, depleting the resources of the parties and taxpayers. *Ruderman v. Washington Nat. Ins. Co.*, No. 08-CV-23401, 2010 WL 11505574, at *7 (S.D. Fla . Nov. 12, 2010). A settlement that "will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing" merits approval. *Lipuma*, 406 F. Supp. 2d at 1324. Such is the case here. Approval will avoid complex, expensive, and lengthy litigation, saving resources of the parties and the Court.

### D. There Were No Objections to the Settlement.

A "miniscule number of objectors in comparison to the class size is entitled to significant weight in the final approval analysis." *Equifax*, 2020 WL 256132, at *10 (citing *Lipuma*, 406 F. Supp. 2d at 1324 ("[A] low percentage of objections points to the reasonableness of a proposed settlement and supports its approval"); *Home Depot*, 2016 WL 6902351, at *4 (same)). Here, there has been no opposition to the Settlement Agreement. Meredith Decl. at ¶¶ 11-12. Further, the Settlement Administrator has already received 298 timely-filed claim forms. *Id.* at ¶ 11.

### E. Plaintiffs Had Sufficient Information to Evaluate the Benefits of Settling Versus the Risk of Further Litigation.

At the time of settlement, courts evaluate the progress of litigation in order to ensure that Plaintiffs "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Berman v. Gen. Motors LLC*, No. 2:18-CV-1437, 2019 WL 6163798, at *8 (S.D. Fla. Nov. 18, 2019) (quoting *Saccoccio*, 297 F.R.D. at 694). Here, as described above, Co-Lead Counsel litigated this matter extensively and had more than sufficient information to evaluate the merits of the case and the benefits of settlement given the extensive discovery and motions practice that took place.

## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.

Settlement classes are routinely certified in data breach cases. *See, e.g.*, *Home Depot*, No. 1:14-MD-02583-TWT, 2017 WL 9605206, at *3 (N.D. Ga. Sept. 22, 2017) (final approval). Plaintiffs explained in their Preliminary Approval Motion how the Settlement Class meets all the requirements of Rule 23(a) and (b)(3). In its Preliminary Approval Order, the Court tentatively agreed with Plaintiffs and conditionally certified the Settlement Class. Prelim. Approval Order at 3-4; Prelim. Approval Mot. at 22-31. Nothing has changed regarding the Rule 23 factors since that order was entered, and the Settlement Class should be finally certified.

## III.    THE NOTICE PROGRAM, AS IMPLEMENTED, SATISFIES DUE PROCESS AND RULE 23.

In its Preliminary Approval Order, the Court approved the notice program,

found that it met the requirements of due process and Rule 23, and directed that it be carried out. Since entry of the Court's order, the Settlement Administrator, KCC, fully implemented the notice program. Meredith Decl. Accordingly, KCC individually mailed a notice and claims package to Class Members at their last known address, and with reasonable follow up efforts the Notice Packets reached all but 246 out of 4,379 Class Members. *Id.* at ¶¶ 6-10. In addition, the notice itself was understandable, described the litigation, set forth the terms of the settlement, and contained all of the information reasonably necessary for a class member to exercise its rights. SA, Ex. 4.

Accordingly, the Court should find that the class was provided with the best notice practicable under the circumstances and that the notice program, as implemented, satisfies the requirements of due process and Rule 23. *See, e.g., Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *6 (M.D. Fla. Nov. 19, 2009) (approving notice by first class mail to most recent known address); *Home Depot*, 2016 WL 6902351, at *1, 3.

## IV.  <u>VISA'S AMICUS SUBMISSION DOES NOT AFFECT THE APPROPRIATENESS OF FINAL APPROVAL.</u>

Despite Visa's contentions in its Amicus Brief, Plaintiffs have accurately conveyed the terms of the Settlement Agreement to the Court and the Settlement Class, including the bargained-for benefit of Arby's relinquishing its right to prevent

distribution of Visa's assessment, in the Settlement Agreement, Notice, Preliminary Approval Motion, and Response to Visa. SA at ¶ 5.5; Notice at ¶ 8; Prelim. Approval Mot. at 7-8; Pls.' Resp. to Visa at 8-10. Visa's claims that Plaintiffs misled the Court and the Class is inaccurate, and as such do not affect the appropriateness of final approval (nor has Visa sought to prevent final approval).

Visa's Global Compromised Account Recovery Program ("GCAR")[12] is the contractual assessment process Visa employs to help partially compensate impacted issuing banks and credit unions for their damages after any major data breach. GCAR (and MasterCard's ADC) provides an avenue for determining liability, calculating assessment amounts related to operations costs (e.g. card reissuance) and fraud related to a breach, and levies the assessment against the breached merchant's "acquiring bank" at the time of the breach, in this case, BAMS. When the assessment and appeals are complete, Visa collects the money from the acquiring bank to distribute it. Via GCAR, in September 2019 Visa collected approximately $16.5 million from BAMS for the Data Breach but has yet to distribute this sum to its impacted issuing banks and credit unions. Amicus Br. at 8-9.

BAMS sought indemnification from Arby's for the amount it paid to Visa through GCAR for the Data Breach. When Arby's refused to pay, BAMS sued

---

[12] MasterCard's assessment program is called the Account Data Compromise Program ("ADC").

Arby's. *See Banc of Am. Merch. Servs., LCC v. Arby's Rest. Grp., Inc.*, No. 20-CVS-426 (N.C. Super. Ct. Mecklenburg Cty.). Arby's impleaded Visa into that case, and its (heavily redacted) complaint appears to assert that Visa violated its own GCAR rules in levying the assessment,[13] but the redacted complaint does not convey what rules Visa allegedly violated. Def. Third-Party Plaintiff Arby's Rest. Grp., Inc.'s Third-Party Complaint Against Visa, *Bank of Am. Merch. Servs. LLC*, 20-CVS-426 (Filed Under Seal) ("Arby's Complaint"); Pls.' Resp. to Visa at 4.

Visa claims in its Amicus Brief that Plaintiffs misled the Court and the Class by describing Arby's agreement not to challenge the distribution of Visa's assessment as an additional benefit, and argues that Arby's Complaint renders this benefit illusory. Amicus Br. at 15-17. Visa comes to this conclusion after parsing a handful of sentences in the Preliminary Approval Motion on pages 7-8 and 15, and describes paragraph 5.5 of the Settlement Agreement in a way that implies Plaintiffs and Arby's had some nefarious purpose to create a loophole to allow Arby's to sue Visa in North Carolina. Visa's Mot. at 1-2; Amicus Br. at 2. As described in full in Plaintiffs' Opposition to Visa, neither of Visa's assertions are true and neither affect the appropriateness of final approval in this case. Pls.' Resp. to Visa at 13.

---

[13] Although not relevant here, the Arby's Complaint also asserts Visa's separate, $25,000 fine against Arby's is an illegal contractual penalty. Pls.' Resp. to Visa at 4.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs request that the Court grant their present motion in its entirety.

Dated: June 30, 2020

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield
GA Bar No. 107744
DOFFERMYRE SHIELDS CANFIELD & KNOWLES, LLC
1355 Peachtree Street, Suite 1900
Atlanta, Georgia 30309
Phone: 404-881-8900
Email: kcanfield@dsckd.com

*Liaison Counsel for Plaintiffs and the Class*

*s/ Brian C. Gudmundson*
Brian C. Gudmundson
(admitted pro hac vice)
ZIMMERMAN REED LLP
1100 IDS Center, 80 South 8th St
Minneapolis, MN 55402
Telephone: 612.341.0400
brian.gudmundson@zimmreed.com

*s/ Karen Hanson Riebel*
Karen Hanson Riebel
(admitted pro hac vice)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
khriebel@locklaw.com

*/s/ James J. Pizziusso*
James J. Pizzirusso

HAUSFELD, LLP
1700 K. Street, NW, Suite 650
Washington, DC 20006
Telephone: 859-225-3731
jpizzirusso@hausfeldllp.com

*Co-Lead Counsel for Plaintiffs and the Class*

## CERTIFICATE OF COMPLIANCE

I hereby certify, in compliance with Local Rule 5.1(c), that the foregoing motion and brief has been prepared using 14-point Times New Roman font.

Dated: June 30, 2020

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield
GA Bar No. 107744
DOFFERMYRE SHIELDS CANFIELD &
KNOWLES, LLC
1355 Peachtree Street, Suite 1900
Atlanta, Georgia 30309
Phone: 404-881-8900
Email: kcanfield@dsckd.com

*Liaison Counsel for Plaintiffs and the Class*

*s/ Brian C. Gudmundson*
Brian C. Gudmundson
(admitted pro hac vice)
ZIMMERMAN REED LLP
1100 IDS Center, 80 South 8th St
Minneapolis, MN 55402
Telephone: 612.341.0400
brian.gudmundson@zimmreed.com

*s/ Karen Hanson Riebel*
Karen Hanson Riebel
(admitted pro hac vice)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
khriebel@locklaw.com

*/s/ James J. Pizziusso*
James J. Pizzirusso

27

HAUSFELD, LLP
1700 K. Street, NW, Suite 650
Washington, DC 20006
Telephone: 859-225-3731
jpizzirusso@hausfeldllp.com

*Co-Lead Counsel for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this June 30, 2020, I served all parties by causing a true and correct copy of the foregoing Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Certification of the Settlement Class, and Memorandum of Law to be filed with the Clerk of Court using the CM/ECF system, which automatically sends a copy to all counsel registered to received service.

*/s/ Kenneth S. Canfield*
Kenneth S. Canfield
GA Bar No. 107744
DOFFERMYRE SHIELDS CANFIELD &
KNOWLES, LLC
1355 Peachtree Street, Suite 1900
Atlanta, Georgia 30309
Phone: 404-881-8900
Email: kcanfield@dsckd.com

*Liaison Counsel for Plaintiffs and the Class*

*s/ Brian C. Gudmundson*
Brian C. Gudmundson
(admitted pro hac vice)
ZIMMERMAN REED LLP
1100 IDS Center, 80 South 8th St
Minneapolis, MN 55402
Telephone: 612.341.0400
brian.gudmundson@zimmreed.com

*s/ Karen Hanson Riebel*
Karen Hanson Riebel
(admitted pro hac vice)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.

100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
khriebel@locklaw.com

*/s/ James J. Pizziusso*
James J. Pizzirusso
HAUSFELD, LLP
1700 K. Street, NW, Suite 650
Washington, DC 20006
Telephone: 859-225-3731
jpizzirusso@hausfeldllp.com

*Co-Lead Counsel for Plaintiffs and the Class*